**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 8, 2015**

# In the Court of Appeals of Georgia

A15A0896. BIRDSONG v. BARNETT.

MCFADDEN, Judge.

Jeffrey Birdsong appeals from a trial court order holding him in criminal contempt for violating a stalking protective order. He claims that there was insufficient evidence to support the contempt order, that no foundation was laid for admission of a video recording at the contempt hearing and that he was denied due process because the date of the alleged violation was not set forth in the victim's petition. However, there was sufficient evidence to support the finding of contempt beyond a reasonable doubt, a proper foundation was laid for admission of the video recording, and Birdsong's due process rights were not violated. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Birdsong contends that there was insufficient evidence showing that he violated the stalking protective order. The contention is without merit.

> [T]he evidence in any criminal contempt case must show that the defendant is guilty beyond a reasonable doubt. Indeed, criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. And on appeal of a criminal-contempt conviction, the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moton v. State*, 332 Ga. App. 300 (722 SE2d 393) (2015) (citations and punctuation omitted).

So viewed, the record shows that Catherine Barnett and Birdsong were neighbors. On May 30, 2014, Barnett filed a petition in the Superior Court of Gwinnett County alleging that Birdsong had stolen property from her family's backyard, thrown rocks and bricks through a window of their house, and verbally threatened her and other family members. The trial court granted Barnett an ex parte temporary protective order against Birdsong and set the matter down for a hearing. After the hearing on June 5, 2014, Birdsong consented to the trial court's issuance of a 12-month stalking protective order which enjoined him from doing anything to threaten, harass, or intimidate Barnett or her immediate family. The order further

2

prohibited Birdsong from following Barnett, placing her under surveillance or having contact of any type with her or her immediate family. Approximately two months later, on August 19, 2014, Barnett filed a motion for contempt, asserting that Birdsong had violated the 12-month stalking protective order by repeatedly shining a light on her when she took out the trash, shining the light into her house and yelling obscenities at her.

The trial court issued a rule nisi for a hearing on September 3, 2014. At the hearing, Barnett testified that on the night of August 17, 2014, she was taking garbage out to a backyard trash can when Birdsong, who was on his front porch, began shining a red light in her face. He continually shined the light at her and on her face as she pulled the trash can to the street and walked back to her house. Birdsong began yelling obscenities at Barnett. Her husband came outside, but Barnett told him to go back inside to avoid an altercation. Barnett also introduced a video recording of the incident from home security cameras which showed Birdsong on his property shining the light at Barnett and her house. Birdsong, who was represented by counsel, exercised his right not to testify and presented no other evidence.

The trial court found that Birdsong was in wilful contempt of court because he had violated the stalking protective order by "shining a light (flashlight) into the

property and at the person of [Barnett] for purposes of harassing and intimidating [her]." The court ordered that Birdsong be incarcerated for 10 days and that the protective order remain in effect until its expiration.

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Thus, Barnett's testimony was enough to establish that Birdsong had violated the protective order. In addition, the video evidence of the incident supplemented Barnett's testimony. Accordingly, we conclude that "the evidence was sufficient to support the trial court's finding that [Birdsong] was guilty of criminal contempt." *Moton*, supra at 303.

2. *Admission of video recording.*

Birdsong contends that under OCGA § 24-9-923 (c), Barnett did not lay a proper foundation for introduction of the video recording from the unmanned security cameras because, among other things, it did not contain a date and time as required by that code section. However, even if we assume that Barnett did not strictly comply with that code section, OCGA § 24-9-923 (d) provides that "this Code section shall not be the exclusive method of introduction into evidence of . . . video recordings, . . . but shall be supplementary to any other law and lawful methods existing in this state." See *Rodriguez-Nova v. State*, 295 Ga. 868, 869 (2), n. 3 (763

SE2d 698) (2014) (noting that OCGA § 24-9-923 is the current codification of the provisions of former OCGA § 24-4-48, which "were carried forward into the new Evidence Code").

In Georgia, "[g]enerally, a videotape is admissible where 'the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred.' [Cit.]" *Sowell v. State*, 327 Ga. App. 532, 536 (1) (759 SE2d 602) (2014), quoting *Phagan v. State*, 268 Ga. 272, 281 (5) (486 SE2d 876) (1997). In this case, Barnett, who witnessed the events recorded by her home security system cameras, testified that she had personally transferred the video from that system to the disc which she presented to the court and that the video accurately depicted the incident on the date in question. "Both this [c]ourt and our Supreme Court have affirmed trial courts' admission of videotapes, in circumstances such as in this case, where even though there are no contemporaneous date and times on the videotapes, there is other evidence of reliability." *Holloway v. State*, 287 Ga. App. 655, 657 (2) (653 SE2d 95) (2007) (citations omitted).

Birdsong further takes issue with the foundation laid for the video evidence because Barnett testified that the disc also contained two recordings of an incident

5

other than the August 17th flashlight incident. But this issue provides no basis for finding error because the trial court expressly refused to look at those other recordings and only viewed the recordings from the August 17th incident. "Trial courts have broad discretion to determine whether a sufficient foundation has been provided for the introduction of evidence. We will not reverse the trial court's ruling in this regard unless there has been an abuse of that discretion." *Sheppard v. State*, 300 Ga. App. 631, 634 (2) (686 SE2d 295) (2009) (citation and punctuation omitted). Under the circumstances of this case, the trial court did not abuse its discretion in finding that a sufficient foundation had been laid for introduction of the video evidence.

3. *Due process.*

Birdsong complains that his due process rights were violated because Barnett's motion for contempt of the stalking protective order failed to specify the date of the alleged violation, and therefore the trial court should have dismissed the motion. While it would have been the better practice to include the specific date in the motion, we find no due process violation in this case.

> The constitutional right to due process applies in criminal contempt proceedings because a conviction can result in the loss of liberty and the levy of a penal fine. Both the United States and Georgia

> Constitutions require that an accused be given notice and an opportunity to be heard before being convicted, except in rare instances. The notice must be reasonably calculated to inform persons of the charges against them and their opportunity for a hearing at a specific time and place to present their objections.

*Hedquist v. Hedquist*, 275 Ga. 188, 189 (563 SE2d 854) (2002) (citations omitted).

"[W]here the alleged contumacious conduct is disobedience to a mandate of the court, . . . the law requires that a rule nisi issue and be served upon the accused. . . . The notice given by the rule nisi is to afford the accused a reasonable time in which to prepare his defense to the charge that he had violated the court's order." *Crocker v. Crocker*, 132 Ga. App. 587, 589 (1) (208 SE2d 602) (1974) (citations, punctuation and emphasis omitted).

In the instant case, the motion for contempt of the stalking protective order and the rule nisi setting the show cause hearing for September 3, 2014, were served by mail on Birdsong on August 19, 2014. Birdsong retained counsel, who filed a response to the motion and represented him at the hearing. Under these circumstances, we find that Birdsong was given adequate notice of, and opportunity to defend himself at, the hearing on the motion for contempt of the protective order. See *Hedquist*, supra (noting that it has been held that service on party of motion for contempt and rule nisi 17 days before hearing complies with notice requirements of

7

due process). Compare *Salter v. Greene*, 226 Ga. App. 384, 385-386 (1) (486 SE2d 650) (1997) (finding due process violation where no rule nisi was issued, appellant was not advised of contempt charge and did not have legal representation at hearing).

As for Barnett's failure to include the specific date of the alleged violation in her motion for contempt, Birdsong cites statutory and case law pertaining to an indictment alleging a specific date on which the crime was committed. See OCGA § 17-7-54 (a); *Demetrios v. State*, 246 Ga. App. 506, 512 (6) (541 SE2d 83) (2000). Indeed, "[g]enerally, to be perfect in form, an indictment must allege a specific date on which the crime was committed. It follows that an indictment that fails to specify the date upon which the crime occurred is subject to special demurrer." *Palatini v. State*, ___ Ga. App. ___ (Case No. A15A0642, decided July 14, 2015) (citations and footnote omitted). While the instant case involves a party's motion for contempt, not an indictment issued by a grand jury, even if we assume such law pertaining to indictments is applicable to this case, Birdsong's bare assertion that he could not adequately prepare his defense "does not establish prejudice or surprise." *Demetrios*, supra at 512 (6) (citation omitted).

In prior cases where indictments failed to allege a particular date, but "the cases proceeded to trial, the defendants were convicted, and the defendants appealed[,

8

b]ecause the trials had already occurred, this court was able to review all the evidence and conclude that the defendants had not in fact been surprised or otherwise prejudiced by the lack of specificity in the indictments." *State v. Gamblin*, 251 Ga. App. 283, 284 (1) (553 SE2d 866) (2001) (citations omitted). Likewise, in this case, because the contempt hearing has already occurred, we can review all the evidence and conclude that Birdsong was not in fact prejudiced or surprised by the lack of a specific date in Barnett's motion. As an initial matter, the motion for contempt was filed approximately two months after the stalking protective order was issued, so Birdsong was put on notice that the alleged violation occurred within that time frame. Indeed, his trial counsel acknowledged as much at the outset of the contempt hearing. Moreover, at the start of the hearing, Barnett stated that the incident alleged in her motion occurred on August 17th and that she had also filed a warrant application hearing request based on the same incident, which plainly stated the August 17th date. It appears from the transcript that she handed a copy of the warrant application to the court, and the trial court told Birdsong's counsel that, based on the documents he was "inclined to find your client has had some sort of notice or idea what date she was talking about." When the court subsequently asked counsel if he was claiming that Birdsong had not gotten notice of the warrant application, counsel replied, "No."

9

Finally, Birdsong has made no showing that he was actually surprised or deprived of a defense due to the lack of a specific date in the motion for contempt. Accordingly, "[i]t does not appear that the failure to allege a more specific date for the offense materially affected his ability to present a defense. We [thus] find no error in the court's failure to dismiss the [motion]." *Gentry v. State*, 235 Ga. App. 328, 329-330 (3) (508 SE2d 671) (1998) (citation omitted).

*Judgment affirmed. Dillard, J., concurs and Ellington, P. J., concurs in the judgment only.*